Mary Lois TILLMAN, Plaintiff,

v.

Edward COLEY, Jr., Individually and in his capacity as Sheriff of Bleckley County, Georgia; George Halliburton, Alvin Savage, Linda Porter and Charles Cranford, Defendants.

Civ. A. No. 88–7–1–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Jan. 18, 1989.

---

Louis K. Polonsky, Jane E. Strell, Atlanta, Ga., for plaintiff.

George M. Peagler, Jr., Americus, Ga., for defendants.

## ORDER

OWENS, Chief Judge.

Mrs. Mary Lois Tillman, a now forty-five year old black female who resides in Cochran, Bleckley County, Georgia, sued Bleckley County Sheriff Edward Coley, Jr. pursuant to 42 U.S.C. § 1983 for violating her Fourth and Fourteenth Amendment constitutional rights by causing a warrant to issue on January 10, 1986, for her arrest, knowing there was not probable cause to believe that she, Mary Lois Tillman, had committed a crime. Pursuant to the issuance of this warrant and at the instruction of Sheriff Coley, plaintiff then was arrested at her home, was taken into custody and was transported to Sheriff Coley's office, where she was read her *Miranda* rights prior to any consideration or investigation of her husband's assertion that she had done nothing wrong.

Sheriff Coley denies that he in any way violated Mrs. Tillman's constitutional rights and further asserts by motion for summary judgment that he cannot be sued in this court because he is entitled to good faith or qualified immunity under the Supreme Court of the United States decisions of *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); and *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Plaintiff vigorously contested Sheriff Coley's contention that he is entitled to good faith or qualified immunity and submitted briefs in support of her arguments.

At pretrial, counsel were heard from in argument. Neither in argument nor in any written submission did either the plaintiff or the defendant contend there existed any genuine issue of material fact on the issue of good faith or qualified immunity. Each contends the material facts on this issue are undisputed, and each contends the issue should be decided in his or her favor. After hearing from counsel, the court at pretrial orally decided that defendant's claim of qualified immunity should be denied. Because the denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable final decision under 28 U.S.C. § 1291, the defendant requested the entry of this order confirming the denial of defendant's claim of good faith or qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. at 530, 105 S.Ct. at 2817, 86 L.Ed.2d at 427 (1985). As requested, this order confirms the denial of defendant Sheriff Coley's claim of qualified immunity. The reasons for denial are as follows.

### The Undisputed Material Facts

The defendant, Sheriff Edward Coley, Jr., since January 1, 1973, has been the Sheriff of Bleckley County, which according to the latest United States census has a total population of 10,600 people and which encompasses the City of Cochran in which 4,900 of those people live. Mary Lois Tillman and her husband, John Henry Tillman, are black citizens who for seven to eight years had lived in a trailer at 421 Thompson Street in Cochran with their son, Danny, and their son, Elijah, his wife and children. Sheriff Coley, before this incident, knew the Tillman family, knew where they lived and could identify the plaintiff by sight and by name as Mary Tillman, Lois Tillman or Mary Lois—having heard her called by all three names. Sheriff Coley was also generally aware of Mary Lois Tillman's age and knew that she had never been involved in crime.

George W. Halliburton, Jr., a then twenty-three year old black City of Macon police officer, was loaned by the City of Macon, Georgia Police Department to Sheriff Coley and Lieutenant Cranford of the City of Cochran Police Department in the Fall of 1985 to work undercover in an attempt to make drug cases in Bleckley County and Cochran. Only Sheriff Coley and Lieuten-

ant Cranford knew that Officer Halliburton was working undercover; Officer Halliburton usually reported only to Sheriff Coley and only at the Sheriff's home.

On October 19, 1985, at around 12:35 a.m., Officer Halliburton succeeded in buying a small amount of marijuana for $5.00 from a young black female in the street at the corner of Sixth and Thompson Streets in the area of several clubs and down the street some two to three hundred feet from the trailer in which plaintiff and her family resided.

Immediately after making the marijuana buy Officer Halliburton made a written report of the incident (Plaintiff Exhibit 1, copy attached) in which he stated the seller's name to be "Mary Tilma," the item purchased as "(1) one small yellow envelope—containing brownish-greeny-seeded leafy material's (sic) believed to be marijauna (sic). Value $5" and on the back of which he described the incident and the seller as follows:

1.A: This is my first buy from this black female. She wore blue jean's (sic) and a purple pullover top. She has short straight black hair. Looked to be about 24. Dark complexion—5'5—140 lbs. I was sitting in the car, when I spotted her. I called her over and asked her what were she holding. She replied a nick. I told her I would take that. So I handed her a $5 bill, she handed me the yellow coin envelope in exchange. She stated that it were (sic) some good dope. 10–19–85—12:35 a.m.

Officer Halliburton went to Sheriff Coley's home and either showed him the incident report or told him what was included on the incident report. Officer Halliburton does not recall telling the Sheriff anything other than what was contained in the incident report.

Sheriff Coley knew only one black female named Mary Tillman, knew that she lived with her family in a trailer two to three hundred feet from where this in-the-street transaction took place, and knew that there was a discrepancy as to the age of the Mary Tillman he knew and the Mary Tilma described on the incident report. Specifically, Sheriff Coley never felt that the plaintiff, Mary Lois Tillman, looked to be twenty-four years of age. Deposition of Sheriff, p. 94.

Officer Halliburton, between October 19, 1985, and January 10, 1986, did not succeed in making a second drug buy from the same black female because he was unable to again make contact with her.

Between October 19, 1985, and January 10, 1986, Sheriff Coley did nothing to try to determine whether or not the Mary Lois Tillman he knew was the about twenty-four year old "Mary Tilma" from whom Officer Halliburton bought marijuana in October. Common sense suggests that at the very least Sheriff Coley could have detailed Officer Halliburton to observe Mary Lois Tillman's trailer from afar and with the aid of binoculars to determine whether or not the black female from whom he purchased marijuana resided in the trailer, and, if she did, to further determine whether or not she still appeared to Officer Halliburton to be about twenty-four years of age.

On January 10, 1986, Sheriff Coley personally typed an affidavit for George Halliburton to swear to before the judge of magistrate court. It stated:

Personally came George Halliburton, Jr., who on oath says that, to the best of his knowledge and belief, Mary Tillman did, in the County aforesaid, commit the offense of, TO–WIT VGCSA (Sale of Marijuana (sic)) in said County, between the hours of 12:01 A.M. and 1:00 A.M. on the 19 day of October, 1985. The place of occurrence of said offense being intersection of 6th & Thompson Street, Cochran, Georgia and against the laws of the State of Georgia. Said offense being described as Mary Tillman did sale (sic) a quantity of Marijuana to George Halliburton, Jr. for the consideration of $5.00 in City and County funds and thus depondent (sic) makes this affidavit that a warrant may issue for his arrest. /s/ George W. Halliburton, Jr., Affiant.

On the back of the warrant Sheriff Coley

typed Mary Tillman, 421 Thompson Street,[1] Cochran, Georgia 31014. Sheriff Coley and only Sheriff Coley decided that a warrant would be sought for the Mary Tillman who lived in a trailer at 421 Thompson Street, Cochran, Georgia. As typed by Sheriff Coley, the affidavit, warrant, name and address (Exhibit 2, copy attached) were presented to and sworn to by Officer Halliburton before the magistrate, who then issued the already-prepared warrant for Mary Tillman, 421 Thompson Street, Cochran, Georgia 31014.

Upon the taking of his deposition, Sheriff Coley testified on pp. 146–147:

Q. I'm asking you, prior to the time (on January 17, 1986, after plaintiff was arrested and taken to the Sheriff's office) that Officer Halliburton came in and said, "No, this Mary Tillman is not the one that sold me the marijuana," prior to that time, is it your claim that there was sufficient identification to point to the Mary Tillman living at 421 Thompson Street as being the Mary Tillman who sold Undercover Officer Halliburton the marijuana on October 19, 1985?

A. I'm saying I thought there was enough probable cause for us *to bring her in to identify her* because of her height, weight, complexion, the proximity of where the sale went down and so on. I felt like there was enought (sic) for us to bring her in to see if that was the person.

(emphasis added).

At page 52 of his deposition Sheriff Coley also testified:

Q. Prior to the warrant being issued for the arrest of Mary Tillman, did you, Sheriff Coley, have any doubts in your mind that the Mary Tillman that had sold marijuana to Officer Halliburton was the Mary Tillman that you knew?

A. I wouldn't say there weren't no doubts, because we knew there was an age difference. This was just the only Mary Tillman that we knew, and *when you know you've got an age difference,*

*you've got doubts,* but you've got to get this person identified, you know, so that you know. Because we had a case where he was sitting in a car and this female walks up, or he called her up, I don't know which.

(emphasis added).

There is no evidence that Sheriff Coley and/or Officer Halliburton presented the magistrate with any facts other than those in the affidavit typed by Sheriff Coley. The magistrate who issued the warrant was thus unaware of the entire circumstances of Sheriff Coley's doubts and of the fact that Sheriff Coley was causing her to issue a warrant so that Sheriff Coley could arrest forty-two year old Mary Lois Tillman for the purpose of bringing her in to see if she was the twenty-four year old "Mary Tilma" who had sold drugs to Officer Halliburton.

On the night of January 17, 1986, as a part of the roundup of the individuals Officer George Halliburton had made cases against, Deputy Sheriff Savage, Lieutenant Charles Cranford of the Cochran Police Department, and Sheriff Coley's secretary, Linda Porter, were sent by Sheriff Coley to arrest and bring the plaintiff, Mary Lois Tillman, to the Sheriff's office. Asked to tell everything that happened from arrival at the residence until return to the jail, she stated beginning on p. 10:

A. We got out of the car, went up to the door, which it was dark. Either Sarge or Charles Cranford knocked on the door. I was behind them. We were invited in. We all three went in. Mary Tillman was sitting on the left in a chair, of the door, and the right of the door was a couch, and John Henry and his son were sitting there.

Q. What was said and done at that point in time?

A. Charles had the warrant, Charles Cranford.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. Go ahead.

---

**1.** After Mary Lois Tillman was arrested and Sheriff Coley found he had arrested the wrong Mary Tillman, Sheriff Coley, using white-out, eliminated 421 Thompson Street, Cochran from the back of the warrant. It is, therefore, not still on the warrant.

A. Lieutenant Cranford was standing in front of Mary Tillman, told her that we had a warrant for her arrest for violation of Georgia Controlled Substance Act. John Henry stood up and said, "Mary, ain't done nothing."

\* \* \* \* \* \*

Q. When John Henry Tillman stood up and said that his wife ain't done anything, what else happened, or what next happened.

A. Lieutenant Cranford said, you know, "Well, you need to get your coat and come on and go with us," you know.

Q. Talking to whom?

A. Mary.

Q. What did she say?

A. She never said anything. She never spoke. She never said anything inside the trailer, and then—

\* \* \* \* \* \*

Q. What else was said or done prior to you all leaving the house?

A. Lieutenant Cranford told John Henry Tillman, "You might as well go ahead and get your coat and go with us, come on and go with us."

Q. Because there was a warrant for him back at the jail?

A. True.

Q. The reason you went to the residence was to pick up Mary Tillman, not John Henry, correct?

A. Correct.

\* \* \* \* \* \*

Q. On the way back to the jail, did anybody say anything in the car?

A. Yes.

Q. Who said what?

A. Mary more or less mumbled to like John Henry Tillman.

Q. What did she mumble?

A. "I ain't done nothing." And I said, "If you haven't done anything, we'll get it all straightened out soon as we get down there."

To Mrs. Porter the arrested Mary Tillman appeared to be forty years of age.

When Deputy Savage, Lieutenant Cranford and Mrs. Savage got to the jail with the plaintiff and her husband, Mrs. Porter "went in and told the Sheriff, and he said when he could get George Halliburton, you know, to look at her and all, that he'd call us." Porter Deposition, p. 17. Mrs. Porter took Mary Tillman in a few minutes later, and Sheriff Coley read her her *Miranda* rights. Thereafter, Officer Halliburton came over, looked at Mary Lois Tillman and immediately said, "No, that's not the right one." Porter Deposition, p. 18.

Sheriff Coley apologized to Mrs. Tillman and told her she was free to go. Mrs. Tillman walked into the next room, "went kind of weak" (Porter Deposition, p. 19), was helped by Mrs. Porter to the couch, and passed out. A deputy who is an EMT checked her; an ambulance was called, and Mrs. Tillman was taken to the hospital. She remained in the hospital from that Friday to the following Monday.

The charges against Mrs. Mary Lois Tillman, the plaintiff, were dropped. Subsequent investigation revealed that the Mary Tilma who allegedly sold marijuana to Officer Halliburton was plaintiff Mrs. Mary Lois Tillman's niece who, on October 19, 1985, was residing in a house next door to the trailer in which plaintiff Mary Lois Tillman resided.

### The Law

The Civil Rights Act of 1871, now known as 42 U.S.C. § 1983, as here applicable provides as follows:

> Every person who, under color of any statute, ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

As a falsely arrested, injured citizen of the United States, Mrs. Tillman pursuant to this law has sued Sheriff Coley, a law enforcement officer who acted under color of the laws of the State of Georgia to prepare and cause to issue a warrant for her arrest. Plaintiff contends that the Sheriff knew that probable cause did not

exist to believe that she, Mary Lois Tillman, had committed a crime when he prepared and caused said warrant to issue. By doing so, she contends that Sheriff Coley caused her to be subjected to a deprivation of her rights derived from the Fourth Amendment to the Constitution of the United States which since 1791 has provided:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and *no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing* the place to be searched, and *the persons* or things *to be seized.*

(emphasis added). She further contends that, having done so, Sheriff Coley is liable or responsible to her for such monetary damages as a jury of this court upon trial may award her.

Standing between Mrs. Tillman's Fourth Amendment rights, as those rights have been made applicable to the States by the Fourteenth Amendment, and her right to sue Sheriff Coley under 42 U.S.C. § 1983, is the wall of good faith or qualified immunity which shields all law enforcement officers, including Sheriff Coley, from being sued under 42 U.S.C. § 1983 in certain circumstances. Those circumstances and the underlying rationales therefor were recently summarized by the Supreme Court of the United States as follows:

When government officials abuse their offices, "action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees." *Harlow v. Fitzgerald,* 457 U.S. at 814, 73 L.Ed.2d 396, 102 S.Ct. 2727 [at 2736]. On the other hand, permitting damage suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harrassing litigation will unduly inhibit officials in the discharge of their duties. *Ibid.* Our cases have accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as

their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *See e.g., Malley v. Briggs,* 475 U.S. 335, 341, 89 L.Ed.2d 271, 106 S.Ct. 1092 [1096] (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"); *id.,* at 344–345, 89 L.Ed.2d 271, 106 S.Ct. 1092 [at 1098–1099] (police officers applying for warrants are immune if a reasonable officer could have believed that there was probable cause to support the application); *Mitchell v. Forsyth,* 472 U.S. 511, 528, 86 L.Ed.2d 411, 105 S.Ct. 2806 [2816] (1985) (officials are immune unless "the law clearly proscribed the actions" they took); *Davis v. Scherer,* 468 U.S. 183, 191, 82 L.Ed.2d 139, 104 S.Ct. 3012 [3017] (1984); *id.,* at 198, 82 L.Ed.2d 139, 104 S.Ct. 3012 [at 3021]. (Brennan, J., concurring in part and dissenting in part); *Harlow v. Fitzgerald, supra* [457 U.S.], at 819, 73 L.Ed.2d 396, 102 S.Ct. 2727 [at 2738]. *Cf., e.g., Procunier v. Navarette,* 434 U.S. 555, 562, 55 L.Ed.2d 24, 98 S.Ct. 855 [859] (1978). Somewhat more concretely, whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, *Harlow,* 457 U.S., at 819, 73 L.Ed.2d 396, 102 S.Ct. 2727 [at 2738], assessed in light of the legal rules that were "clearly established" at the time it was taken, *id.,* at 818, 73 L.Ed.2d 396, 102 S.Ct. 2727 [at 2738].

The operation of this standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly estab-

lished law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow*. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *Harlow* would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy "the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties," by making it impossible for officials "reasonably [to] anticipate when their conduct may give rise to liability for damages." *Davis*, 468 U.S., at 195, 82 L.Ed.2d 139, 104 S.Ct. 3012 [at 3019]. It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, *see Mitchell*, 472 U.S., at 535, n. 12, 86 L.Ed.2d 411, 105 S.Ct. 2806 [at 2820, n. 12]; but it is to say that in the light of preexisting law the unlawfulness must be apparent. *See e.g., Malley supra* [475 U.S.], at 344–345, 89 L.Ed.2d 271, 106 S.Ct. 1092 [at 1098–1099]; *Mitchell supra*, at 528, 86 L.Ed.2d 411, 105 S.Ct. 2806 [at 2816]; *Davis, supra*, [468 U.S.], at 191, 195, 82 L.Ed.2d 139, 104 S.Ct. 3012 [at 3017].

*Anderson v. Creighton*, 483 U.S. 635 at —, 107 S.Ct. 3034 at 3038, 97 L.Ed.2d 523 at 529 (1987) (footnote omitted).

Sheriff Coley contends that he is shielded from civil liability because under the facts of this case a reasonable law enforcement officer applying for a warrant for the arrest of the plaintiff, Mary Lois Tillman, knowing what he knew, could have believed that there was probable cause to support the application for a warrant. Acknowledging that he was aware, as any reasonable law enforcement officer would have been aware, of the long, clearly established constitutional requirement of probable cause and the constitutional prohibition against arrest absent such probable cause, he nevertheless contends that viewed objectively his conduct in causing a warrant to issue for the arrest of the plaintiff was objectively legally reasonable. The plaintiff, as already noted, vigorously contends that the Sheriff's conduct in causing the warrant for the arrest of the plaintiff to issue and in causing her to be arrested was unquestionably objectively legally unreasonable.

Sheriff Coley, at such time as this case is tried to a jury, can be found to be liable for monetary damages in an amount to be determined by the jury. A finding that the Sheriff's conduct was objectively legally unreasonable does not amount to a determination or finding that Sheriff Coley is liable to the plaintiff. It constitutes only a finding by this court that as a matter of law Sheriff Coley is not shielded or protected by the doctrine of qualified immunity from being sued by this plaintiff under these undisputed factual circumstances. With that caveat in mind, it is this court's considered judgment that viewed objectively—that is, disregarding Sheriff Coley's personal, subjective belief of the constitutionality of his own conduct—it is obvious that no reasonably competent law enforcement officer would have concluded that a warrant should have issued for the arrest of the plaintiff, Mary Lois Tillman.

The paramount reason for this court's conclusion of unreasonableness is its opinion that no reasonably competent law enforcement officer who knew Mary Lois Tillman and who in particular knew her approximate age and thus knew of the discrepancy in both the name and the description of Mary Lois Tillman and the "Mary Tilma" who allegedly sold marijuana at 12:35 a.m. on October 19, 1985, would have caused plaintiff Mary Lois Tillman to be accused of that crime. Further, in this

court's considered judgment, no reasonably competent law enforcement officer would seek an arrest warrant for any particular person when doubtful as every reasonably competent law enforcement officer would here have been of the identity of the person who committed the crime.

Additionally, the Supreme Court of the United States has repeatedly found the issuance of either arrest or search warrants on conclusory or "bare bones" affidavits to be constitutionally insufficient. *See generally Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983). Thus, any reasonably competent law enforcement officer would have concluded that the "bare bones" affidavit prepared by Sheriff Coley was constitutionally inadequate and would neither have prepared for presentment nor presented that affidavit and warrant to a magistrate to be merely "rubber stamped." *United States v. Leon,* 468 U.S. 897, 914, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677, 693 (1984). In *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the Supreme Court held that, where "a reasonably well trained officer in petitioner's position would have known that his affidavit failed to establish probable cause," the officer should not have applied for the warrant. *Id.* at 345, 106 S.Ct. at 1098, 89 L.Ed.2d at 281. An application for a warrant absent probable cause "create[s] the unnecessary danger of an unlawful arrest." *Id.* at 345, 106 S.Ct. at 1098, 89 L.Ed.2d at 281. That a magistrate issues a warrant in such a case does not excuse the police officer. "The officer cannot excuse his own default by pointing to the greater incompetence of the magistrate." *Id.* at 346 n. 9, 106 S.Ct. at 1099 n. 9, 89 L.Ed.2d at 281 n. 9. Sheriff Coley's preparation of a constitutionally infirm affidavit and his application for a warrant based thereon preclude the invocation of the qualified immunity defense.

Alternatively, reasonably competent law enforcement officers, aware of the constitutional command of probable cause as every reasonably competent officer is, would present sufficient information by affidavit to the magistrate to enable the magistrate to make an independent determination of probable cause. In this case, a reasonably competent law enforcement officer would have included in the affidavit all that was known by Officer Halliburton and Sheriff Coley about the October 19, 1985, incident, about Mary Tilma, and about Mary Lois Tillman. This information, if included, would have made the magistrate's obligation to ascertain the existence of probable cause truly independent and meaningful.

The deposition testimony of Sheriff Coley clearly establishes that he, the officer who in reality applied for and prompted the issuance of the warrant for the arrest of Mary Lois Tillman, did not believe that the forty-two year old plaintiff was the young woman who had sold Officer Halliburton the marijuana and thus did not believe that probable cause existed for the issuance of a warrant for plaintiff's arrest. Thus, this court finds as a fact not only that a reasonable police officer would fail to believe that there existed probable cause to support the application but also that Sheriff Coley did in fact and at the time of the application fail to so believe. The application for a warrant under these conditions is unconscionable and precludes the availability of the qualified immunity defense.

"Nothing is more clear than that the Fourth Amendment was meant to prevent the wholesale intrusion upon the personal security of our citizenry, whether those intrusions be termed 'arrests' or 'investigatory detentions.'" *Davis v. Mississippi,* 394 U.S. 721, 726–27, 89 S.Ct. 1394, 1397, 22 L.Ed.2d 676, 688 (1969) (footnote omitted). Though the *Davis* case involved the warrantless investigatory detention of black youths by the Meridian, Mississippi police department, the message announced by the Supreme Court is clear—the seizure of individuals absent probable cause to believe that the particular individual has committed or is committing a crime violates the Constitution. Applying for and causing the issuance of a warrant for an individual's arrest merely to substantiate the belief of the applying officer that the arrested individual is *not* the perpetrator of a crime

turns upside down the concept of probable cause.

In a situation similar to the one before this court, the Sixth Circuit Court of Appeals stated as follows:

> In the present case, the defendants could not have prevailed on a qualified immunity defense as a matter of law because they had admitted that they knew that it would have been illegal for them to place Arrington into custody solely for the purpose of determining her identity. Thus, if Arrington prevailed in proving her essential allegations that she was placed into custody solely for the purpose of ascertaining her identity, the qualified immunity defense advanced by defendants would be defeated. On the other hand, if Arrington failed to prove that she had been arrested for identification purposes, she would have failed in supporting the existence of a constitutional violation for which the officers could be held responsible.

*Arrington v. McDonald*, 808 F.2d 466, 468 (6th Cir.1986); *see also, Baskin v. Parker*, 602 F.2d 1205 (5th Cir.1979).[2] In *Baskin*, the court held that a cause of action exists under section 1983 against a sheriff where the sheriff's deputy obtained a warrant absent probable cause and where the evidence could support the conclusion that the sheriff participated in obtaining the warrant and in organizing the subsequent unconstitutional search.

Defendant Sheriff Coley has admitted that he did not have probable cause to believe that plaintiff Mary Lois Tillman had committed a crime and that he applied for and obtained a warrant for her arrest merely to identify her. While he has not expressly admitted that he knew the arrest of an individual for identification purposes was illegal, this court determines that the illegality of such arrest is clearly established and beyond peradventure. Probable cause does not exist under the circumstances of this case, and this court finds it clear that no reasonable law enforcement officer would propose otherwise.

In summary, this court determines that no reasonably competent officer, knowing all that Sheriff Coley knew, would have concluded that the arrest warrant in question should have been applied for or issued. Thus, the defense of qualified or good faith immunity is not available to Sheriff Coley in this case.

SO ORDERED.

---

**2.** Cases decided by the former Fifth Circuit prior to October 1, 1981, are binding precedent in this court. *Bonner v. Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*). *Baskin* has been cited with approval in *Motes v. Myers,* 810 F.2d 1055, 1059 (11th Cir.1987).

EXHIBIT 1

| PROPERTY RECEIPT<br>Police Department City of Macon, Georgia<br>MPD FORM 1/1-2 | Case/Incident Number: | Date/Time: *12:35 am*<br>*10-19-85* |
|---|---|---|
| Receiving Unit:<br>*Bleckley County Sheriff Dept.* | Location:<br>THE CITY OF MACON, GEORGIA   31201 | |
| Name and SS## of Person from whom Property was obtained:<br>☒ Owner *MARY TILMA*<br>☐ Other *Black Female* | Addresses (Including ZIP Code);<br>_Residence_      _Business_<br>*Unknown - Street*<br>*Dealer - 1st - Buy* | |
| Location of Property when obtained:<br>*Coronor   of SIX Street and Thompson Street - In the Streets* | Purpose for which obtained:<br>*Evidence* | |
| NCIC Checked: ☐ Yes ☐ No  DATE:_____ | Results of NCIC Check:<br>☐ Positive ☐ Negative | |

| ITEM NUMBER | QUANTITY | DESCRIPTION OF ITEM(s)<br>(Including serial number, model number, identifying marks, etc). |
|---|---|---|
| *1* | *1* | *(1) one small yellow envelope - Containing Brownish - greeny - seeded Leafy materials Beleived to be Marijauna. Value. $5* |

CHAIN OF CUSTODY

| ITEM NUMBER | DATE | RELINQUISHED BY | RECEIVED BY | PURPOSE OF CUSTODY |
|---|---|---|---|---|
| *1* | *10-19-85* | Typed/Printed Name and Badge Number: *#124 George W Halliburton Jr*<br>Signature: *George W Halliburton Jr* | Typed/Printed Name and Badge Number:<br>Signature: | *STATE CRIME LAB* |
| *1* | *11-21-85* | Typed/Printed Name and Badge Number: *George W Halliburton Jr*<br>Signature: *George W Halliburton* | Typed/Printed Name and Badge Number: *885-3684*<br>Signature: *Shawn Humphry* | |
| | | Typed/Printed Name and Badge Number:<br>Signature: | Typed/Printed Name and Badge Number:<br>Signature: | PLAINTIFF'S EXHIBIT<br>Halliburton<br>*7-8-88* |

PLAINTIFF'S EXHIBIT     VOUCHER

1. A: This is my first buy from this Black Female. She wore Blue Jean's and a purple pullover Top. She has short straight Black hair. Looked to be about 24. Dark complexion- 5'5 - 140 Lbs.

I was sitting in the CAR, when I spotted her. I called her over and Asked her what were she holding. She replied A Nick. I told her I would take that. So I handed her a $5 Bill, She handed me the yellow coin envelope in exchange. She stated that it were some good Dope. 10-19-85- 12:35am.

**1582**

## EXHIBIT 2

STATE WARRANT ( ) MITTIMUS           PULASKI PRINTERS – HAWKINSVILLE

### GEORGIA, BLECKLEY COUNTY

Personally came __George Halliburton, Jr.__, who on oath says that, to the best of his knowledge and belief, __Mary Tillman__ did, in the County aforesaid, commit the offense of, TO-WIT __VGCSA (Sale of Maijuana)__ in said County, between the hours of __12:01 A__M. and __01:00 A__ M., on the __19__ day of __October__ 19 __85__. The place of occurrence of said offense being __intersection of 6th & Thompson Street, Cochran, Georgia__ and against __The LaWS OF The State of Georgia__

Said offense being described as __Mary Tillman did sale a quantity of Marijuana to George Halliburton, Jr for the consideration of $5.00 in City and County funds.__

and thus deopondent makes this affidavit that a warrant may issue for his arrest.

_George Wm. Halliburton J_     Affiant.

Sworn to and subscribed before me this __10__ day of __January__, 19 __86__.

_Betty W. Horne_
JUDGE, MAGISTRATE COURT

### GEORGIA, BLECKLEY COUNTY

To any Sheriff or his deputy, Coroner, Constable, or Bailiff of said State, GREETING:

For sufficient causes made known to me in the above affidavit, you are hereby commanded to arrest __Mary Tillman__ the defendant named in the foregoing affidavit charged by the prosecutor therein with the offense against the laws of this State as enunciated in said affidavit and bring him before me or some other Judicial Officer of this State to be dealt with as the law directs.

Herein fail not. This __10th day of January__, 19 __86__.

_Betty W. Horne_
JUDGE, MAGISTRATE COURT

### GEORGIA, BLECKLEY COUNTY

After hearing the evidence in the above case it is ordered that said defendant be bound in a bond of _____ Dollars for his appearance on the first day at the next term or session next after this day of the _____ Court of _____ to be held in and for said County to answer the charge of _____

In default thereof that he be committed to the common jail of said County, there to be safely kept until thence delivered by due course of law.

Given under my hand and seal this _____ day of _____, 19 ____

_____ (L.S.)
JUDGE, MAGISTRATE COURT

PLAINTIFF'S EXHIBIT

PLAINTIFF'S EXHIBIT

## BOND FOR APPEARANCE

STATE OF GEORGIA, Bleckley County. Know all men by these presentments that we, _____ _____ as principal and _____ Security agree jointly and severally to pay _____ _____, Governor of Georgia and his successors in office _____ _____ Dollars and for the true payment of which we bind ourselves by these presentments. The condition of the above obligation is such that the above principal shall personally appear at the _____ Court holden in and for said county on the _____ day of _____, 19_____, at _____ o'clock ___M., and from day to day and term to term thereof until discharged by law to answer the offense of _____ as charged in the affidavit of _____, then the obligation to be null and void, else in full force and effect. In addition to all other requirements of the foregoing, we, principal and security agree that the above bond and recognizance is conditioned also upon the appearance of the principal before the court at the time fixed for his arraignment. And as to this obligation, we severally waive our rights to the benefits of Homestead Exemption laws of this State and of the United States as fully as we are authorized to do by the Constitution and laws of this State and the United States.

Signed with our hands and sealed with our seals this_____ day of _____, 19_____
Attested by:

_____   _____ (L. S.)

Approved by:                    _____ (L. S.)

_____   _____ (L. S.)

_____ (L. S.)

---

9:177

CASE NO. 86-0147

## STATE WARRANT

BOND _____

THE STATE
vs.
Mary Tillman

, Georgia 31014

CHARGED

VGCSA (Sale of Marijuana)

O.C.G.A. 16-13-30

George Halliburton, Jr.
Prosecutor

Residence  Macon, Georgia

Phone  744-7571

Warrant executed on the _____ day of December 19 85

at _____ o'clock _____ M.; By: _____

WITNESSES