Mary Lois **TILLMAN**,
Plaintiff–Appellee,

v.

**Edward COLEY, Jr., Individually and in his official capacity as Sheriff of Bleckley County, Ga., Defendant–Appellant.**

No. 89–8065.

United States Court of Appeals,
Eleventh Circuit.

Oct. 18, 1989.

George M. Peagler, Ellis, Easterlin, Peagler, & Gatewood, Americus, Ga., for defendant-appellant.

Louis K. Polonsky, Jane E. Strell, Atlanta, Ga., for plaintiff-appellee.

Before FAY and HATCHETT, Circuit Judges, and ALLGOOD,[*] Senior District Judge.

HATCHETT, Circuit Judge:

In this case, the district court ruled that the Sheriff of Bleckley County, Georgia, was not entitled to summary judgment based on a defense of qualified immunity where the sheriff caused the arrest of a person for the purpose of identification. 703 F.Supp. 1571. We affirm.

## I. FACTS

Sheriff Edward Coley, Jr., supervised an undercover drug operation in Bleckley County, Georgia, between September, 1985, and January, 1986. On October 19, 1985, shortly after midnight, an undercover police officer bought a small amount of marijuana from a young woman who identified herself as Mary Tillman. Immediately after the transaction, the undercover police officer completed a written report in which he noted the seller's name as "Mary Tilma":

1.A.: This is my first buy from this black female. She wore blue jean's [sic] and a purple pullover top. She has short straight black hair. Looked to be about 24. Dark complexion—5'5—140 lbs. I was sitting in the car, when I spotted her. I called her over and asked her what were [sic] she holding. She replied

a nick. I told her I would take that. So I handed her a $5 bill, she handed me the yellow coin envelope in exchange. She stated that it were [sic] some good dope. 10–19–85—12:35 a.m.

Following the sale, the undercover police officer went to Sheriff Coley's home and reported the transaction.

Sheriff Coley has lived in Bleckley County all his life and has been sheriff since 1973. He knew only one Mary Tillman or "Tilma," and he knew that she lived with her family in a trailer 200 to 300 feet from the site of the marijuana sale. Most importantly, however, he realized that Tillman's age, forty-one at the time, did not match the age of the Mary "Tilma" described in the incident report.

Between October 19, 1985, and January 10, 1986, Sheriff Coley took no steps to determine whether the Mary Tillman he knew was the same woman from whom the undercover police officer had purchased the marijuana. During this period he had "doubts in [his] mind" about her identity.[1] On January 10, 1986, Sheriff Coley personally typed an affidavit for the undercover police officer to sign to obtain a warrant for Mary Tillman's arrest. Sheriff Coley did not inform the magistrate who issued the arrest warrant of his doubts concerning the age discrepancy.

On January 17, 1986, at Sheriff Coley's direction, sheriff office personnel arrested Mary Tillman. Upon her arrival at the county jail, Sheriff Coley sent for the undercover police officer. When the undercover police officer arrived, he immediately stated that she was not the person who had sold him the marijuana. Sheriff Coley apologized to Tillman and told her she was free to go. As Tillman was leaving, she

---

[*] Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. In deposition, Sheriff Coley testified:

A. I knew as far as the age that we had a difference. As far as the other description, it was very, very similar.

. . . .

Q. Prior to the warrant being issued for the arrest of a Mary Tillman, did you, Sheriff Coley,

have any doubts in your mind that the Mary Tillman that had sold marijuana to Officer Halliburton was the Mary Tillman that you knew?

A. I wouldn't say there weren't no doubts, because we knew there was an age difference. This was just the only Mary Tillman that we knew, and when you know you've got an age difference, you've got doubts, but you've got to get this person identified, you know, so that you know.

fainted. Medical personnel took Tillman by ambulance to the local hospital where she remained for treatment for three days.

## II. PROCEDURAL HISTORY

Tillman filed this lawsuit pursuant to 42 U.S.C. § 1983 against Sheriff Coley alleging that he procured her arrest without probable cause to believe she had committed an offense. Sheriff Coley moved for summary judgment contending that the lawsuit against him was barred by the doctrine of qualified immunity. The district court denied Sheriff Coley's motion holding that "no reasonably competent law enforcement officer would have concluded that a warrant should have issued for the arrest of the plaintiff, Mary Lois Tillman," especially when the officer had personal knowledge of Tillman and of the age discrepancy. The district court also found that Sheriff Coley had admitted he lacked probable cause to believe Tillman was the seller of the marijuana, and that he obtained the warrant merely to identify her.

## III. CONTENTIONS OF THE PARTIES

Sheriff Coley contends that the district court improperly denied his motion for summary judgment because the undisputed facts do not demonstrate a constitutional violation. Coley further contends that even if his conduct violated Tillman's fourth amendment rights, he is shielded from liability by the doctrine of qualified immunity.

Tillman contends that Sheriff Coley unconstitutionally procured the arrest warrant in order to identify her or to eliminate her as a suspect. She also contends that the district court properly denied Sheriff Coley's motion for summary judgment based on qualified immunity because no reasonable law enforcement officer possessing Coley's knowledge of the matter would have applied for an arrest warrant.

The issue before us is whether Tillman's lawsuit is barred by the doctrine of qualified immunity.

## IV. DISCUSSION

Tillman must prove that she was deprived of a constitutionally guaranteed right under color of state law to succeed in this civil action pursuant to 42 U.S.C. § 1983.[2] *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

"A district court's denial of a claim of qualified immunity, to the extent it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 129, notwithstanding the absence of a final judgment." *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). The court reviews a district court's denial of a summary judgment motion based on qualified immunity *de novo. Waldrop v. Evans,* 871 F.2d 1030 (11th Cir.1989). Qualified immunity is defined in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), where the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a *reasonable* person should have known." 457 U.S. at 818, 102 S.Ct. at 2738 (emphasis added).

Sheriff Coley concedes that clearly established law requires probable cause to support an arrest, but he argues that the doctrine of qualified immunity shields government officials from civil liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct.

---

**2.** Section 1983 provides in pertinent part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
   42 U.S.C. § 1983 (1982).

3034, 3038, 97 L.Ed.2d 523, 530 (1987). This court recently found that the appropriate standard for an allegation of unlawful arrest is whether "a reasonably well-trained officer in [appellant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Garmon v. Lumpkin County, Georgia,* 878 F.2d 1406, 1410 (11th Cir.1989) (citing *Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986)). In *Garmon,* the court denied the sheriff the qualified immunity defense because his inability to find evidence of an abduction, as the plaintiff had alleged, could not reasonably have constituted affirmative evidence that the plaintiff had made a false report of crime.

Sheriff Coley argues that *Rich v. Dollar,* 841 F.2d 1558 (11th Cir.1988) supports his claim of qualified immunity. It does not. In *Rich v. Dollar,* the court granted qualified immunity for a state attorney's investigator not because it found that probable cause existed for the arrest, but because it found insufficient evidence that the investigator had *caused* the arrest; consequently, he was "entitled to qualified immunity as a public official acting within the scope of his discretionary authority." 841 F.2d at 1566. In this case, if the undercover police officer were the defendant, *Rich* might control. This case is distinguishable from *Rich,* however, because Sheriff Coley *caused* the issuance of the arrest warrant and the arrest.[3]

■ All reported cases support our holding that Sheriff Coley is not entitled to the qualified immunity defense. The probable cause standard required to obtain an arrest warrant stands as a shield to protect citizens from the emotional distress and invasion of privacy suffered by Tillman in this case. *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1948). An officer mistakenly arresting a second party when the arrest of the first party would be valid may be protected by quali-

fied immunity only if the mistake in arresting the second party is "reasonable." *Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971) (mistake reasonable under the circumstances).

■ Sheriff Coley asserts that he reasonably believed that probable cause existed to support the warrant because the height, weight, and complexion of the suspect in the undercover police officer's report generally matched those of Mary Tillman; the transaction occurred within two to three hundred feet of Tillman's home; and Sheriff Coley knew only one Mary Tillman in that area.

Resolution of Sheriff Coley's claim of protection under qualified immunity depends on whether a reasonably well-trained officer with the information in the undercover police officer's report and with his doubts about the suspect's identity would have known that probable cause did not exist. Sheriff Coley testified in his deposition as follows:

> Q: [I]s it your claim that there was sufficient identification to point to the Mary Tillman living at 421 Thompson Street as being the Mary Tillman who sold undercover officer Halliburton the marijuana on October 19, 1985?
>
> SHERIFF COLEY: I'm saying I thought there was enough probable cause for us to bring her in to identify her because of her height, weight, complexion, the proximity of where the sale went down and so on. I felt like there was enough for us to bring her in to see if that was the person.

The facts demonstrate that Sheriff Coley believed that without further investigation into the age discrepancy, he had probable cause to obtain a warrant for Tillman's arrest. The arrest was for the purpose of determining if she was the twenty-four-year-old person who had sold drugs to the undercover police officer. In other words, the arrest was for the sole purpose of identification. *Cf. Arrington v. McDonald,* 808 F.2d 466 (6th Cir.1986) (quali-

---

**3.** While the court in *Rich* did not base its holding on whether probable cause existed for the arrest, the court's opinion suggests that consid-

erable direct evidence proved Rich's involvement in an alleged fraudulent gem marketing scheme. 841 F.2d at 1561.

fied immunity not available when person arrested for purpose of identification).

This is not a case where time was of the essence in making the arrest. *See Brinegar, supra,* 338 U.S. at 177 (probable cause determination depends on the circumstances). Sheriff Coley had at least three months to resolve his doubts about Tillman's identity. Because of the doubts he harbored, Sheriff Coley's actions were not reasonable. *See United States v. Valez,* 796 F.2d 24, 28 (2d Cir.1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 957, 93 L.Ed.2d 1005 (1987) (information casting doubt on identity relevant to the determination of reasonableness).

■ Although the law does not require "that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person," due process does require that some steps be taken to eliminate doubts concerning identity that exist prior to obtaining the warrant and to arrest. *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The United States Supreme Court found in *Baker v. McCollan* that the plaintiff had been arrested on a facially valid warrant. In that case, Sheriff Baker had no doubts about plaintiff's identity at the time he arrested the plaintiff. Plaintiff's claim was not based on a fourth amendment violation because probable cause was lacking for his arrest due to faulty identification, but on his continued detention after he had asserted his innocence. The Court found that once a suspect is arrested under a warrant supported by probable cause, a sheriff need not "investigate independently every claim of innocence." 443 U.S. at 145–46, 99 S.Ct. at 2695.

■ Sheriff Baker relied on a valid arrest warrant, sworn to by another law enforcement officer. Under the rationale in *Baker v. McCollan,* Sheriff Coley was not required to investigate every claim of innocence raised by Tillman; but he was required to investigate his own serious doubts regarding the suspect's identity to satisfy the probable cause requirement of the fourth amendment in obtaining the arrest warrant. A reasonable police officer would have been sufficiently concerned by the age discrepancy of a generation to make further investigation as to whether the Mary Tillman he knew had a daughter or a niece.[4] At the very least, Coley could have inquired of the undercover police officer whether the seller could have been closer to forty years of age. In light of the age discrepancy, Sheriff Coley could not rely solely on his own or a fellow police officer's belief that the name was correct, or that only one Mary Tillman lived or visited in the area. In addition, the undercover police officer could have identified Mary Tillman as the suspect in a "stakeout" of her home, or her work, or through another purchase.

## V. CONCLUSION

■ We hold that while the absence of probable cause will not always defeat a qualified immunity defense, no reasonable law enforcement officer may conclude that an arrest warrant may be obtained and an arrest made for the sole purpose of identifying a suspect. The order of the district court denying summary judgment is affirmed.

AFFIRMED.

FAY, Circuit Judge, dissenting:

Most respectfully, I dissent. Judge Hatchett has set forth accurately both the facts and the law. When applying the test of whether or not Sheriff Coley reasonably could have believed that probable cause existed for the warrant and arrest, however, I come to a different conclusion. The arrest of Mary Tillman was a part of a large undercover operation. Sheriff Coley was operating and relying upon information relayed to him by an undercover officer brought in from another jurisdiction. That information indicated to him that Mary Tillman probably was involved. The

---

**4.** Further investigation revealed that the suspect was Mary Tillman's niece who was living next door to Tillman.

sale took place very close to her home and the physical description matched. The only discrepancy was the age factor.

To suggest, as appellee's counsel argues, that Sheriff Coley knew that Mary Tillman would never engage in such activities is nonsense. No law enforcement official should or could operate on such subjective belief and completely ignore the facts of reality. Regrettably, we now are aware that drug abuse and illegal narcotics transactions have pervaded all segments of our society. It seems equally unimpressive to me to argue that Sheriff Coley should have gone with the undercover officer to Mary Tillman's neighborhood and attempted another identification of the seller of the dope. Someone might have recognized the sheriff and disrupted the entire operation.

The sheriff did the best that he could under the circumstances. He relied upon the information given him for all the arrest warrants. He also made certain that the undercover officer was available for immediate confirmation that the proper individuals were being brought into the station.

It seems to me the majority mistakenly is penalizing Sheriff Coley for being a long-time resident, familiar with his county and its inhabitants. Applying an objective test for the existence of probable cause, one seriously cannot question his conclusion. This was a hand-to-hand sale to a trained police officer. The seller gave her name as Mary Tilma, or a similar-sounding name. The sale took place a few hundred feet from Mary Tillman's home. The physical characteristics of the seller matched Mary Tillman. It was dark when the transaction occurred, and the undercover officer was not familiar with the area or Mary Tillman.

It seems to me that Sheriff Coley would have been guilty of misfeasance had he not attempted to obtain a warrant for the arrest of Mary Tillman and that he is entitled to the protection of qualified immunity. The finding of the district court that Sheriff Coley admitted that he lacked probable cause is clearly erroneous as conceded by counsel during oral argument. Since the majority does not rely upon this finding, it is not of great significance, other than the fact that it may have influenced the district judge. My review of the record convinces me that the law requires a ruling in favor of Sheriff Coley on the basis of qualified immunity. I would vacate the ruling of the district court and direct the entry of summary judgment in favor of the sheriff.