[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10537
_____

D.C. Docket No. 4:18-cv-00502-WS-MJF


MICHAEL L. MCGROARTY,

Plaintiff-Appellant,


versus


RICHARD L. SWEARINGEN,
In his Official Capacity as Commissioner of Florida Department of Law
Enforcement,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(October 20, 2020)

Before WILSON and BRANCH, Circuit Judges, and RESTANI,[*] Judge.

BRANCH, Circuit Judge:

Michael McGroarty appeals the grant of Richard Swearingen's motion to dismiss McGroarty's 42 U.S.C. § 1983 claims against Swearingen alleging a violation of McGroarty's substantive due process rights. McGroarty asserted in his complaint that Swearingen, in his official capacity as the Commissioner of the Florida Department of Law Enforcement ("FDLE"), violated his constitutional rights by continuing to publish his personally identifiable information on FDLE's sex offender registry website even after McGroarty had completed probation and was no longer subject to Florida registration laws. The narrow issue we must decide is whether McGroarty's claims are barred by the applicable statute of limitations or whether there was a continuing violation of law. We find that McGroarty's suit is time barred and affirm the district court's dismissal of McGroarty's complaint.

## I. Background

McGroarty filed suit against Swearingen in the U.S. District Court for the Northern District of Florida on November 1, 2018. McGroarty's amended complaint sought declaratory and injunctive relief for three § 1983 claims: two

---

[*] Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

violations of his substantive due process rights under the Fourteenth Amendment ("liberty interests" and the "right to travel," respectively), and one violation of his substantive due process rights under the Florida Constitution. *See* Fla. Const. art. I, § 9.

The essential allegations in the complaint are as follows. McGroarty pleaded guilty to three counts of sexual crimes against children on December 12, 2001 and January 29, 2002. He was sentenced to ten years of probation. Because of his conviction, McGroarty is subject to lifetime sex offender registration requirements under federal law. *See* Fla. Stat. § 943.0435; 18 U.S.C. § 2250. As a resident of Florida, he was also subject to registration requirements there. McGroarty moved to California in 2004 and followed its sex offender registration requirements. McGroarty successfully completed probation for his Florida offenses in January of 2012 but was notified of continuing registration obligations in Florida by state officials on March 14, 2012. In October of 2012, McGroarty moved to North Carolina, where he has remained since. Because he no longer resides in Florida, he is not required to update his registration there and is not subject to penalties for failing to do so.

Although McGroarty completed probation in 2012, Florida maintains information about McGroarty, including his photograph, on its online database

3

pursuant to Florida's sex offender registry law, Fla. Stat. § 943.0435.[1]     McGroarty

alleged that Florida lost jurisdiction to enforce compliance with its sex offender

registry statute after he moved to California in 2004 because McGroarty was no

longer a resident of Florida.  Further, McGroarty argued, his information was

already available to the public and law enforcement agencies through the federal

national sex offender registry.  Thus, because "Florida . . . continued to maintain

and disseminate [McGroarty's] personal information on the FDLE public website

for . . . 14 years" from when he moved to California, McGroarty alleged FDLE

violated his substantive due process rights.[2]

Swearingen filed a motion to dismiss, arguing in part that McGroarty's

claims were time barred by the statute of limitations.  Swearingen urged that

"[p]resent consequences resulting from a discrete past act do not extend a statute of

limitations," and, furthermore, "allegations of continuing *injury* are not allegations

of wrongful continuing *conduct*."  As a consequence, Swearingen reasoned,

"[McGroarty] cannot claim that each negative social interaction, nor e.g., each trip

to a sheriff's office to update his information, extended the limitations period."

---

[1] In relevant part, the statute allows for the state "to release a reproduction of a color-photograph or digital-image license to the Department of Law Enforcement for purposes of public notification of sexual offenders as provided in this section."  Fla. Stat. § 943.0435.

[2] The suit was brought against Swearingen in his official role as Commissioner of FDLE because that agency oversees the website at issue.

McGroarty responded to the argument that his claims were time barred by stating that, at the time Florida notified him of his continuing sex offender registration requirements in 2012, Florida caselaw held that "the registration requirements of § 943.0435 were continuing in nature for statute of limitations purposes . . . ." *See Lieble v. State*, 933 So.2d 119, 121 (Fla. 5th DCA 2006). McGroarty also argued that his cause of action had not accrued until the Supreme Court issued *Nichols v. United States*, which held that a registered sex offender who moved out of the United States without notifying state authorities of his new address could not be convicted of failure to update his sex-offender registration under federal law. *See* 136 S. Ct. 1113, 1115–18 (2016). McGroarty argued that *Nichols* essentially held that Florida could not enforce its sex offender registry laws against him and thus established a new claim.

The district court entered an order dismissing McGroarty's claims as time barred. The court stated that the continued effects of Fla. Stat. § 943.0435 did not extend the limitations period. The court also rejected McGroarty's argument that *Nichols* changed the date of accrual for his claims. McGroarty timely filed his notice of appeal.

McGroarty asserts two arguments for why the district court was incorrect to dismiss his complaint as time-barred. First, he argues that the continuing violation doctrine applies to his claims because the dissemination of his personal

5

information on a public website is a continuous injury. Second, he argues that his claims did not accrue until the Supreme Court decided *United States v. Nichols*, 136 S. Ct. 1113 (2016). We deal with each in turn.

## II. Standard of Review

"We review de novo the district court's grant of a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim, accepting the factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006). "We independently review the district court's ruling concerning the applicable statute of limitations." *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003).

## III. Discussion

A. McGroarty Has Not Waived His Continuing Violation Argument

As a threshold matter, we disagree with Swearingen's assertion that McGroarty waived any argument regarding a continuing violation by not raising it below. Generally, arguments are considered "waived" when they are not raised in the district court. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). In this case, the continuing violation issue was raised by Swearingen in his motion to dismiss as part of his argument that the statute of limitations bars § 1983 claims after four years. In direct response to Swearingen's continuing violation

6

argument, McGroarty made two counterarguments: first, that the plaintiff was notified by letter of his "continuing obligations" as of March 2012; second, that those obligations were "continuing" under state law "for statute of limitations purposes," citing *Lieble v. State*, 933 So.2d 119, 121 (Fla. 5th DCA 2006), which held that "failure to register" was a "continuing offense."  And the district court, in fact, ruled on the statute of limitations issue by specifically refusing to apply the continuing violation doctrine.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (the general purpose of the waiver doctrine is so that we, as an appeals court, do not "waste our resources" or "deviate from the essential nature" of an appellate court by not addressing questions which "district courts never had a chance to examine.").  Therefore, we decline to hold there was a waiver here.

B. McGroarty's Claims were Time-Barred Because There was No Continuing Violation

The parties do not dispute that a plaintiff must commence a § 1983 claim in Florida within four years of when the cause of action accrues.  The four-year clock exists because "[s]ection 1983 claims . . . are governed by the forum state's residual personal injury statute of limitations."  *Burton v. City of Belle Glade*, 178 F.3d 1175, 1188 (11th Cir. 1999).  "Specifically, a plaintiff must commence a § 1983 claim arising in Florida within four years of the allegedly unconstitutional or otherwise illegal act."  *Id.*  The parties do dispute, however, whether the injury

7

that underlies McGroarty's claims is time-barred or exempt from that requirement through the continuing violation doctrine.

As an initial matter, because McGroarty's injury occurred in 2004,[3] and he did not file this action until 2018, his claims are outside the applicable four-year statute of limitations.  Accordingly, his claims are clearly time-barred unless an exception to the statute of limitations applies to his claims.  Here, he argues that the continuing violation doctrine applies and excuses his suit from the application of the statute of limitations.

"The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period."  *Ctr. For Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006). [4]  We have noted the limits of this doctrine as follows: "this Circuit distinguishes between the present consequence of a one time violation, which does not extend the limitations period, and the continuation of that violation into the

---

[3] Although the complaint does not specify, we presume that McGroarty's information was posted online in 2004, since his complaint indicated it had been online for fourteen years, and the complaint was filed in 2018.  This date would also coincide with his move to California.

[4] McGroarty generally argues, and our case law holds, that we first examine the text of the act allegedly being violated to determine if an injury is continuous in nature.  *Ctr. For Biological Diversity*, 453 F.3d at 1334.  As he concedes that he has no continuing obligations to update his registration under the Florida statute, however, the statute itself does not aid our inquiry.  Thus, we examine our case law.

present, which does." *Id*. at 1335 (quoting *City of Hialeah v. Rojas*, 311 F.3d 1096, 1101 (11th Cir. 2002)).

As noted above, McGroarty has no continuing registration requirements in Florida. He argues, however, that the continued display of his information on Florida's sex offender registry is a continuing violation because he continuously suffers the injury of having his information published, which interferes with his daily life.[5] McGroarty's argument fails to appreciate the limits of the continuing violation doctrine—he has alleged a continuing harm (which does not extend the limitations period), not a continuing violation (which may extend the period).

We made the continuing harm/continuing violation distinction clear in a similar case where a prisoner challenged the Georgia Parole Board's decision to change the frequency with which it considered inmates' eligibility for parole. *See Lovett,* 327 F.3d at 1182. Lovett brought his claim three years after he was notified of the decision to change the date he would be reconsidered for parole and one year outside of Georgia's statute of limitations. Accordingly, he argued that he was excused from the statute of limitations because the continuing violation

---

[5] At oral argument, counsel for McGroarty specifically disavowed the argument that a new violation occurred each time the FDLE updated their website or re-posted information. In response to our questions, counsel took the position that "every day" was a continuing violation even without any "affirmative action" on the part of FDLE. Therefore, we do not address whether re-posting information online could be a new injury that restarts the statute of limitations.

doctrine applied to the harm inflicted on him, *i.e.*, a constitutional violation of the *ex post facto* clause. *See id*. at 1182–83. We held that "the defendants' act (deciding *not to consider* Lovett for parole again until 2006) was a one time act with continued consequences, and the limitations period is not extended." *Id*. at 1183. The same analysis applies here. The initial publication of McGroarty's information online was a "one time" act, even though McGroarty is experiencing "present consequences" of that action. *Carter*, 225 F.3d at 1263.[6]

Nor are we persuaded that because Florida law holds that registration requirements are "continuing in nature" for statute of limitations purposes, McGroarty's injury was necessarily continuous. The case McGroarty cites for this proposition, *Lieble v. State*, dealt with a criminal conviction for failure to register. *See* 933 So. 2d at 119. The *Lieble* court held that the defendant's "crime was continuing in nature" and so affirmed his convictions against a challenge that prosecution was time-barred. *Id*. at 120. Simply put, a case focused on a defendant's continuing criminal violations has no bearing on McGroarty's civil

---

[6] McGroarty attempts to circumvent the distinction between a continuing harm and a continuing violation by comparing his case to *Doe 1 v. Marshall*, 367 F. Supp. 3d 1310 (M.D. Ala. 2019), where a district court held that plaintiffs' ongoing obligations to report internet usage, carry identification designating them as sex offenders, and other regulations constituted a continuing violation of their constitutional rights. *See id*. at 1338. Even if *Marshall* were binding on us, which it is not, McGroarty's situation is nothing like that of the plaintiffs in *Marshall*. McGroarty has not challenged an ongoing obligation to do anything. Rather, he alleges only passive effects from a one-time act that occurred in 2004.

claims in this case and does not in any way address whether the posting of information online is a continuing violation for § 1983 lawsuits.

Further, even assuming McGroarty was unaware of his alleged injury when it occurred in 2004, we know for certain that he was aware of it in 2012 when he was notified by Florida that he was still under reporting obligations.  We have previously refused to apply the continuing violation doctrine to plaintiffs who were able to avoid the problem by filing within the statute of limitations period: "The continuing violation doctrine is premised on 'the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated.'" *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1222 (11th Cir. 2001)) (quoting *Alldread v. City of Grenada*, 988 F.2d 1425, 1432 (5th Cir. 1993)).  Here, McGroarty knew or should have known of his claimed injury by March 2012 when he received the letter from FDLE stating that he had continuing registration requirements under the statute which allowed the publication of his personal information, even though he had completed the terms of his probation two months prior in January.  Thus, McGroarty is ineligible for the equitable doctrine of continuing violation.

C. *Nichols* Does Not Change the Date of Accrual

The standard for when a § 1983 claim accrues is well settled in our circuit.  "The statute of limitations on a section 1983 claim begins to run when 'the facts

11

which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *Van Poyck*, 646 F.3d at 867 (quoting *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008)).  As to which facts a plaintiff must know, we have said "[p]laintiffs must know or have reason to know that they were injured, and must be aware or should be aware of who inflicted the injury."  *Rozar v. Mullis*, 85 F.3d 556, 562 (11th Cir. 1996).

McGroarty argues that his claims did not accrue until the Supreme Court decided *Nichols v. United States*, 136 S. Ct. 1113 (2016), because he did not have a viable claim until that decision.  He is wrong for two reasons.

First, our § 1983 accrual doctrine says nothing about a plaintiff knowing the "viability" of the claim—rather, simply knowing "they were injured" and "who inflicted the injury" is enough.  *Rozar*, 85 F.3d at 562; *see also McNair*, 515 F.3d at 1174 ("It is well established that a federal claim accrues when the prospective plaintiff 'knows or has reason to know of the injury which is the basis of the action.'") (quoting *Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 588 (11th Cir.1990)); *see also McCullough v. United States*, 607 F.3d 1355, 1360 (11th Cir. 2010) (finding a plaintiff knew the "critical facts" concerning his injury to begin the statute of limitations clock even though he did not have access to his own medical records).  The § 1983 accrual focuses on the "facts" apparent or reasonably apparent to the plaintiff, not the state of the law.  *Mullinax v.*

12

*McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987).  Thus, the Supreme Court's

subsequent decision in *Nichols* did not affect the accrual date of McGroarty's

§ 1983 claims.  *See United States v. Kubrick*, 444 U.S. 111, 122 (1979) ("We are

unconvinced that for statute of limitations purposes a plaintiff's ignorance of his

legal rights and his ignorance of the fact of his injury or its cause should receive

identical treatment."); *see also White v. Mercury Marine, Div. of Brunswick, Inc.*,

129 F.3d 1428, 1434 (11th Cir. 1997) (holding that when Congress uses the word

"accrue," they mean when the plaintiff has discovered their injury).

Second, *Nichols* did not give rise to a cause of action for McGroarty.  In

*Nichols*, the Supreme Court faced an unusual situation—a registered sex offender

had moved outside the United States and had not updated the last state in which he

resided with his new, foreign address.  *Nichols*, 136 S. Ct. at 1115.  The

government had charged the petitioner with a violation of 18 U.S.C. § 2250, a law

enacted as part of the Sex Offender Registration and Notification Act ("SORNA"),

which criminalized a knowing failure to register or update a registration.  *See id*. at

1116.  The holding in *Nichols*, that SORNA did not require Nichols to update his

registration in a state where he no longer resided, dealt exclusively with federal

law, not Florida law: "SORNA's plain text—in particular, § 16913(a)'s consistent

use of the present tense—therefore did not require Nichols to update his

13

registration in Kansas once he no longer resided there." [7]  136 S. Ct. at 1118.  Thus,

*Nichols* did not affect the accrual of McGroarty's claims under Florida's statute of

limitations.

## IV. Conclusion

Because McGroarty's claims were time-barred when he filed this lawsuit in

2018, and the continuing violation doctrine has no application to it, we affirm.

**AFFIRMED.**

---

[7] SORNA is the federal sex offender registry law: "A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence."  34 U.S.C. § 20913(a).  The only part of the opinion which is potentially relevant to McGroarty's state-law-based claim is where the Court rejects the government's argument that the state still had jurisdiction over *Nichols* when he moved outside of the United States and thus was still an "involved" jurisdiction, as SORNA required for criminal enforcement.  *Nichols,* 136 S. Ct. at 1118.  McGroarty argues that this rejection of the government's argument has implications for his claim against Florida: because he no longer resides, works, or studies in Florida, Florida is not "involved" in his life such that he has to register with Florida under federal law.  But McGroarty's claim has nothing to do with whether he can be charged under SORNA for failure to register.  Even if we conceded that *Nichols* provides support for his argument, it does not squarely decide it or create a claim where there was none before.