[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 21-11046
Non-Argument Calendar

_____

D.C. Docket No. 1:20-cv-02248-JPB

GILREATH FAMILY & COSMETIC DENTISTRY, INC.,
on behalf of itself and others similarly situated
d.b.a. Gilreath Dental Associates,

Plaintiff-Appellant,

versus

THE CINCINNATI INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 31, 2021)

Before WILSON, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

In response to Georgia's shelter-in-place order, as well as federal guidance, Gilreath Family & Cosmetic Dentistry postponed routine and elective dental procedures at the beginning of the COVID-19 pandemic. That obviously led to financial pain, at least in the short term. So Gilreath filed a claim for business-interruption coverage with its insurer, Cincinnati Insurance, seeking to recover the income that it had lost. After Cincinnati Insurance denied the claim, Gilreath sued, alleging that the insurer had breached the terms of its policy. The district court dismissed the complaint because Gilreath had not alleged any "direct physical loss or damage" to property, as necessary for coverage under the policy. We agree and affirm.

## I.

In Spring 2020, as COVID-19 spread throughout the United States, Georgia's governor declared a public health state of emergency and later ordered Georgia residents and visitors to "shelter in place" where they lived. That "shelter-in-place" order was not absolute; people could leave their homes to (among other things) conduct and participate in "Essential Services," which included medical care necessary for health and safety. The Centers for Disease Control and Prevention soon detailed what kinds of medical care it thought should continue. In

its guidance, the CDC recommended that healthcare providers reschedule non-urgent outpatient visits and elective surgeries and, more specifically, that dental practices postpone elective and non-urgent dental visits.

Gilreath Family & Cosmetic Dentistry, a dental practice in Marietta, Georgia, followed that guidance and canceled its routine and elective dental procedures. But because those procedures made up the bulk of the business, Gilreath lost a "substantial portion" of its usual income. To recover that lost income, Gilreath filed a claim for business-interruption coverage with its insurer, Cincinnati Insurance. The claim hinged on three provisions in Gilreath's insurance policy. The "Business Income" and "Extra Expense" provisions require Cincinnati Insurance to pay for income that Gilreath lost "due to the necessary 'suspension'" of its operations and for extra expenses that it sustained during that suspension. That coverage is not unlimited though. The suspension and expenses must have been the result of a "direct 'loss' to property" at the insured premises—here, Gilreath's dental office—and that "loss" must have been the result of a "Covered Cause of Loss." The insurance policy defines a "Covered Cause of Loss" as a "direct 'loss'" not excluded or limited under the policy, and "loss" as "accidental physical loss or accidental physical damage."

The third provision Gilreath filed under, the "Civil Authority" provision, applies when "a Covered Cause of Loss causes damage to property *other than*

3

Covered Property," which for the most part entails damage to property off the dental practice's premises. (Emphasis added.) If, for listed reasons, a civil authority (for example, a city or state) "prohibits access" both to the dental practice and to the area immediately surrounding the physically damaged property, Cincinnati Insurance must pay for any income the business loses and extra expenses it sustains as a result. This provision may come into play if, for example, trees fall and damage the only road providing ingress and egress to a property.

Cincinnati Insurance determined that Gilreath had not asserted any physical loss or damage to property, either at or off the dental practice's premises, and thus denied Gilreath's claim. In response, Gilreath sued on behalf of itself and similarly situated dental practices, alleging that Cincinnati Insurance had breached the policy. A district court dismissed Gilreath's complaint, concluding that the complaint failed to state that any direct physical loss or damage to property had occurred. This appeal followed.

## II.

We review de novo a district court's dismissal of a complaint for failure to state a claim. *See McGroarty v. Swearingen*, 977 F.3d 1302, 1306 (11th Cir. 2020). In doing so, we accept the complaint's factual allegations as true and view them in the light most favorable to the plaintiff. *See id.* But a complaint survives a motion to dismiss only if the plaintiff's claim for relief is plausible—that is, if the

plaintiff pleaded facts that allow a court to reasonably infer "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

III.

Gilreath argues that Cincinnati Insurance breached its policy when it denied Gilreath's claim for business-interruption coverage. The parties agree that we should interpret this policy under Georgia law. Georgia courts interpret an insurance policy like any other contract: they begin with its text. *See Reed v. Auto-Owners Ins. Co.*, 284 Ga. 286, 287 (2008). A court reads that text "as a layman would." *Nat'l Cas. Co. v. Georgia Sch. Bds. Ass'n–Risk Mgmt. Fund*, 304 Ga. 224, 228 (2018). And if that text "unambiguously governs the factual scenario before the court," the policy applies "as written, regardless of whether doing so benefits the carrier or the insured." *Reed*, 284 Ga. at 287.

Gilreath contends that the "Business Income" and "Extra Expense" provisions required Cincinnati Insurance to pay for its lost income and extra expenses while the government restrictions were in effect. But those provisions apply only if the events alleged here—the COVID-19 pandemic and related shelter-in-place order—caused direct "accidental physical loss" or "damage" to the dental practice's property. And the Georgia Court of Appeals has already explained the "common meaning" of "direct physical loss or damage," holding that there must be "an actual change in insured property" that either makes the property

5

"unsatisfactory for future use" or requires "that repairs be made." *AFLAC Inc. v. Chubb & Sons, Inc.*, 260 Ga. App. 306, 308 (2003).

Gilreath has alleged nothing that could qualify, to a layman or anyone else, as physical loss or damage. Here, the shelter-in-place order that Gilreath cites did not damage or change the property in a way that required its repair or precluded its future use for dental procedures. In fact, though the practice postponed routine and elective procedures, Gilreath still used the office to perform emergency procedures. Gilreath finds it problematic that its office is an enclosed space where viral particles tend to linger, and where patients and staff must interact with each other in close quarters. Even so, we do not see how the presence of those particles would cause physical damage or loss to the property. Gilreath thus has failed to state a claim that Cincinnati Insurance breached the policy's "Business Income" or "Extra Expense" provisions.

Gilreath also contends that the "Civil Authority" provision required Cincinnati Insurance to pay for the lost income and extra expenses. But that provision too is contingent on a "Covered Cause of Loss" damaging property— albeit, as relevant here, property off the business premises. *See Assurance Co. of Am. v. BBB Serv. Co.*, 265 Ga. App. 35, 36 (2003) (applying a similar civil-authority provision when a county issued a hurricane evacuation order, and the hurricane damaged property south of the affected business). The allegations about

6

off-premises property are no different than those about the property at the dental practice—Gilreath offers no allegation of physical loss or damage.  So Gilreath's reliance on the "Civil Authority" provision fails for the same reason as its reliance on the other two provisions.  Because all of Gilreath's claims are contingent on a breach of those policy provisions, it has failed to state a claim.

**AFFIRMED.**