[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13411

Non-Argument Calendar

_____

MATTHEW SHANE JACOBS,
DAVID WAYNE JACOBS, SR.,
Individually,

                                                    Plaintiffs-Appellants,

*versus*

TOMMY FORD,
Sheriff, Individually and in his capacity as
Sheriff of the Bay County Sheriff's Office,
RICK ANGLIN,
Major, Individually,
BRYAN TYLER,
Chief, Individually,

JOEL C. CUNIGAN,
Officer, Individually,
LAWRENCE JACK NELSON,
Officer, Individually,
NATHANIEL LEOTUS BROWN,
Deputy, Individually,
TASHA LAUREN MILLER,
Individually,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:21-cv-00001-TKW-MJF

_____

Before JORDAN, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

On May 2, 2019, Matthew Shane Jacobs was booked into the Bay County, Florida jail on a DUI arrest warrant.  Later that day, Jacobs attempted suicide in his jail cell, suffering serious injuries as a result.  Through his father and legal guardian, David Wayne Jacobs, Sr., Jacobs sued various employees of the Bay County

Sheriff's Office.[1]  Principally, in a series of claims brought under 42 U.S.C. § 1983, Jacobs alleged that the defendants violated his constitutional rights by acting with deliberate indifference to the risk that he might attempt suicide while in jail.  Jacobs also asserted negligence claims under Florida law.

The district court dismissed Jacobs's § 1983 claims for failure to state a claim upon which relief could be granted and declined to exercise supplemental jurisdiction over his state-law claims.  Jacobs now appeals the dismissal of his § 1983 claims.  We conclude, as did the district court, that Jacobs has not pleaded that any defendant had actual knowledge of a strong likelihood that he would attempt suicide in jail.  Without such knowledge, there can be no deliberate indifference.  Thus, we affirm.

## I.    Background

### A.    Facts

This case arises from Jacobs's pretrial detention in Bay County, Florida on a DUI charge.  Jacobs was detained two different times in connection with this offense.  On March 7, 2019, Officer Thomas of the Panama City Beach Police Department arrested Jacobs for driving under the influence and took him to the

---

[1] Jacobs's father is also a plaintiff individually and on his own behalf.  For simplicity, we will refer to the plaintiffs collectively as "Jacobs."  When discussing the facts of this case, our references to "Jacobs" are to Matthew.

Bay County jail.[2]  The jail is controlled and operated by the Bay County Sheriff's Office.  At the jail, Officer Thomas filled out an inmate welfare questionnaire, on which she indicated that Jacobs displayed suicidal tendencies, and specifically that Jacobs told her "he wanted to run out in traffic and kill himself."  Jacobs was released from pretrial detention the next day.

After Jacobs failed to appear for a hearing on his DUI charge, an arrest warrant was issued on April 26, 2019.  On May 2, 2019, a visibly intoxicated Jacobs turned himself in to the Bay County jail on the warrant.  While at the jail on May 2, Jacobs had contact with four of the defendants.

First, Defendant Cunigan, an officer of the Bay County Sheriff's Office, took Jacobs into custody and placed him under arrest.  While Officer Cunigan was walking Jacobs over to the jail, Jacobs told the officer that he "had medical conditions" and "did not like being locked up."  Officer Cunigan then completed an inmate welfare questionnaire on which he checked "no" in response to prompts asking if he was aware of any medical concerns and if Jacobs had displayed or stated any suicidal tendencies.

Next, Defendant Miller, an emergency medical technician employed by the Bay County Sheriff's Office, performed a medical

---

[2] The following facts from Jacobs's second amended complaint are taken as true for the purposes of this appeal. *See McGroarty v. Swearingen*, 977 F.3d 1302, 1306 (11th Cir. 2020).

assessment to determine whether Jacobs could be safely accepted into the jail. During the medical assessment, EMT Miller noticed that Jacobs was intoxicated and recorded Jacobs's blood alcohol content as 0.27. Jacobs informed EMT Miller that he suffered from epilepsy and bipolar disorder, was manic, and was not in compliance with his medications. Concluding her medical assessment, EMT Miller determined that Jacobs could be accepted into the jail.

Defendant Nelson, another officer of the Bay County Sheriff's Office, then completed Jacobs's booking into the jail. Officer Nelson placed Jacobs, who was still visibly intoxicated, into a solitary cell that had a corded telephone mounted on the wall.

Lastly, Defendant Brown, a deputy of the Bay County Sheriff's Office, was tasked with performing security checks in the area of the jail where Jacobs was located on the afternoon of May 2. Per Bay County Sheriff's Office policy, security checks are supposed to occur in male booking areas at least every 30 minutes. However, Deputy Brown failed to timely perform a security check at 5:00 PM, which was when Jacobs attempted suicide by hanging using a piece of his shirt and the telephone cord in his cell.[3] Deputy Brown noticed that something was wrong in Jacobs's cell around 5:15 PM and called for emergency assistance. Jacobs was rushed to

---

[3] After the suicide attempt, the Bay County Sheriff's Office wrote Deputy Brown up for failing to timely perform the 5:00 PM security check, and Deputy Brown resigned shortly thereafter.

a hospital, where he was diagnosed with acute respiratory failure and asphyxiation and remained in a coma for several weeks. As a result of his suicide attempt, Jacobs suffered permanent physical and cognitive injuries.

### B.    Procedural History

In January 2021, Jacobs, through his father and legal guardian, filed a complaint in the district court asserting claims against various Bay County government entities and individuals. In April 2021, Jacobs amended his complaint. In July 2021, the district court dismissed Jacobs's first amended complaint without prejudice as a shotgun pleading and for failure to state a claim upon which relief could be granted.

Later in July 2021, Jacobs filed his second amended complaint, which is the operative complaint in this appeal. In his second amended complaint, Jacobs asserted claims against: (1) Tommy Ford, Bay County's sheriff, in his official capacity;[4] (2) three supervisory officials at the Bay County Sheriff's Office—Sheriff Ford, Major Rick Anglin, and Chief Bryan Tyler—in their individual capacities; and (3) the four Bay County Sheriff's Office

---

[4] Jacobs's § 1983 suit against Sheriff Ford in his official capacity is "simply another way of pleading an action against [the] entity of which [the] officer is an agent." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (quotation omitted). Thus, we construe Jacobs's official-capacity suit as against the Bay County Sheriff's Office. *See id.* ("[Section 1983] suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents.").

employees who had contact with Jacobs on May 2, 2019—Officer Cunigan, Officer Nelson, Deputy Brown, and EMT Miller—in their individual capacities.

In addition to several state-law negligence claims, Jacobs's second amended complaint asserted three distinct § 1983 claims based on the defendants' alleged deliberate indifference to the risk that Jacobs might commit suicide in jail. First, in his primary § 1983 claim, Jacobs alleged that the four Bay County Sheriff's Office employees who had contact with him on May 2, 2019, violated his constitutional rights by deliberately disregarding the possibility that he would attempt suicide in his cell. Second, in a *Monell* claim[5] against the Bay County Sheriff's Office, Jacobs alleged that the sheriff's office had a policy or custom of exhibiting deliberate indifference to the suicide risks of detainees and inmates. Third, in a supervisory liability claim, Jacobs alleged that the Bay County Sheriff's Office, as well as Sheriff Ford, Major Anglin, and Chief Tyler individually, were deliberately indifferent to the suicide risks of inmates and detainees in their hiring, training, retention, and supervision of Bay County Sheriff's Office employees. The defendants filed motions to dismiss the second amended complaint for failure to state a claim upon which relief could be granted.

The district court granted the defendants' motions. With respect to Jacobs's primary § 1983 claim against the four employees who had contact with him on May 2, 2019, the district court held

---

[5] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

that Jacobs had not pleaded a plausible deliberate indifference claim because he had failed to plead facts indicating that any of the employees had actual knowledge that Jacobs was suicidal when he was booked into the jail on that day.  The district court then held that Jacobs's *Monell* and supervisory liability claims failed due to the lack of an "underlying . . . violation" of Jacobs's constitutional rights.  Having dismissed each of Jacobs's federal claims, the district court declined to exercise supplemental jurisdiction over his state-law claims and dismissed those claims without prejudice.  The district court entered judgment and Jacobs timely appealed.  On appeal, Jacobs challenges only the dismissal of his § 1983 claims, asserting no challenge to the district court's dismissal of his state-law claims.

## II.    Standard of Review

We review *de novo* the district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).  To survive dismissal for failure to state a claim, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted and alteration adopted). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). And to state a plausible claim for relief, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.  Discussion

"The Due Process Clause of the Fourteenth Amendment guarantees pretrial detainees the right to basic necessities that the Eighth Amendment guarantees convicted persons." *Gish v. Thomas*, 516 F.3d 952, 954 (11th Cir. 2008). Among other things, pretrial detainees have "a right to be protected from self-inflicted injuries, including suicide." *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994). "In a prisoner suicide case, to prevail under section 1983 for violation of substantive rights . . . the plaintiff must show that the jail official displayed deliberate indifference to the prisoner's taking of his own life." *Edwards v. Gilbert*, 867 F.2d 1271, 1274–75 (11th Cir. 1989) (quotation omitted).

"To establish a defendant's deliberate indifference, the plaintiff has to show that the defendant had (1) subjective knowledge of a risk of serious harm; and (2) disregarded that risk; (3) by conduct that is more than mere negligence." *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1268 (11th Cir. 2005) (quotation omitted and alterations adopted). "[D]eliberate indifference requires that the defendant deliberately disregard a *strong likelihood* rather than a mere possibility that the self-infliction of harm will occur." *Cook ex rel. Estate of Tessier v.*

*Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1115 (11th Cir. 2005) (quotation omitted) (emphasis in original). "[T]he mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners." *Id.* (quotation omitted). "Absent knowledge of a detainee's suicidal tendencies . . . failure to prevent suicide has never been held to constitute deliberate indifference." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990).

Jacobs challenges the district court's dismissal of his three § 1983 claims. However, the district court properly dismissed each of those claims—the primary deliberate indifference claim against the four employees who had contact with Jacobs at the Bay County jail; the *Monell* claim against the sheriff's office; and the supervisory liability claim against the sheriff's office and several of its higher-up officials—for the same reason: Jacobs did not plead facts giving rise to a reasonable inference that any defendant had actual knowledge that Jacobs was suicidal on the day he tried to kill himself in his jail cell. *See Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013) (to prevail on a deliberate indifference claim, the plaintiff must demonstrate that the defendant "*actually knew* of the serious risk" (emphasis in original)); *Iqbal*, 556 U.S. at 678 (to survive a motion to dismiss, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable").

With respect to Jacobs's primary § 1983 claim against the four sheriff's office employees who came into contact with him on

May 2, 2019, we begin by noting what Jacobs has *not* pleaded: that he told anyone at the jail that day that he was suicidal. Instead, Jacobs argues that a court could reasonably infer that Officer Cunigan, Officer Nelson, Deputy Brown, and EMT Miller knew he was suicidal on May 2 based on two other facts alleged in his complaint: (1) almost two months prior, on March 7, 2019, he told a different officer he was suicidal when he was initially arrested and brought to the Bay County jail, and the officer recorded that statement on an inmate welfare questionnaire; and (2) he was visibly intoxicated and told some of the defendants that he was anxious, mentally ill, and off his medications when he returned to the jail on May 2. None of these facts, taken separately or together, gives rise to a reasonable inference that any defendant knew Jacobs was suicidal on May 2.

Jacobs's argument that a court could reasonably infer the defendants' knowledge that he was suicidal on May 2 from the fact that a different officer recorded his statement during his separate March 7 jail visit that "he wanted to run out in traffic and kill himself" lacks merit. Jacobs's second amended complaint is devoid of factual specifics indicating that any of the four defendants who came into contact with him on May 2 ever saw or read the inmate questionnaire Officer Thomas filled out during Jacobs's separate jail visit almost two months prior. In a series of boilerplate assertions, Jacobs alleged in his second amended complaint that, "based on the March 7, 2019 Inmate Welfare Questionnaire," Officer Cunigan, Officer Nelson, Deputy Brown, and EMT Miller

each "knew and/or but for the reckless disregard and deliberate indifference to his civil rights would have known that [Jacobs] was suicidal and that there was a strong likelihood that [Jacobs] would attempt suicide." These allegations are "naked assertions devoid of further factual enhancement" that cannot save Jacobs's claims from dismissal. *See Iqbal*, 556 U.S. at 678 (quotation omitted and alteration adopted); *see also Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) ("[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth."). Rote allegations aside, Jacobs's second amended complaint pleaded no facts indicating that Officer Cunigan, Officer Nelson, Deputy Brown, or EMT Miller even knew about the March 7 questionnaire or knew what it said when they came into contact with Jacobs on May 2.

Jacobs's argument that a court could reasonably infer the defendants' knowledge that he was suicidal from the fact that he was visibly intoxicated and told some of the defendants that he was anxious, mentally ill, and off his medications on May 2 lacks merit as well. None of those factors would give a prison official knowledge of a strong likelihood that a detainee would try and end his own life. *See Popham*, 908 F.2d at 1563–64 (concluding that prison officials did not have knowledge of a detainee's suicidal tendencies where the detainee was arrested for public intoxication and was "emotional, depressed, and angry at the time of his arrest"). At bottom, Jacobs's second amended complaint simply lacks facts allowing for a reasonable inference that any of the

defendants who had contact with Jacobs on May 2 had any idea he might try and kill himself that day.  Thus, Jacobs failed to plead a plausible claim of deliberate indifference.  *See Snow*, 420 F.3d at 1268 (explaining that "subjective knowledge of a risk of serious harm" is required for a deliberate indifference claim).

Because Jacobs did not plead a plausible deliberate indifference claim against the sheriff's office employees who came into contact with him on May 2, 2019, his *Monell* and supervisory liability claims fail as well.  "There can be no policy-based liability or supervisory liability when there is no underlying constitutional violation."  *Knight ex rel. Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 821 (11th Cir. 2017); *see also Gish*, 516 F.3d at 955 (holding that county and sheriff could not be liable for *Monell* and supervisory liability claims against them arising from a detainee's suicide where the deputy transporting the detainee was not "deliberately indifferent to a known risk" the detainee would commit suicide and, therefore, "there was no underlying constitutional violation by [the deputy]").

The district court properly dismissed Jacobs's § 1983 claims for failure to state a claim upon which relief could be granted.

**AFFIRMED.**