[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12517

Non-Argument Calendar

_____

HARRY BARNETT,

Plaintiff-Appellant,

*versus*

JUSTIN ELSMORE,
an individual and in his official capacity,
CITY OF KEY WEST,
a municipal corporation,

Defendants-Appellees.

_____

2                    Opinion of the Court                    23-12517

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 4:22-cv-10089-LFL

_____

Before ROSENBAUM, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Harry Barnett sued former Key West Police Officer Justin Elsmore and the City of Key West, alleging a malicious prosecution claim against Officer Elsmore and a failure to train claim against the city. The district court granted Officer Elsmore and the city's motion to dismiss on qualified immunity grounds. Barnett appeals the dismissal and the denial of leave to amend. We affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

In late 2015, Barnett took his sick dog to a veterinarian, Thomas Householder. Dr. Householder misdiagnosed Barnett's dog, which led to the dog permanently losing sight. Beginning on May 9, 2017, Barnett protested Dr. Householder's veterinary clinic by displaying signs on the bed of his red Chevy Colorado pick-up truck, which he left parked in an unrestricted space across the street from the clinic. He stopped by daily to maintain the signs.

_____

[1] Because the district court dismissed Barnett's complaint, we assume the truth of his well-pleaded factual allegations. *McGroarty v. Swearingen*, 977 F.3d 1302, 1306 (11th Cir. 2020).

On May 10, 2017, Kimberly Bryant, a hairdresser who worked at a salon next to the clinic, called the police and falsely reported the truck was illegally parked, causing Barnett to receive a parking violation.  On May 10, 2017, and May 11, 2017, Linda Simonet, an employee of the veterinary clinic, made ill-natured remarks to Barnett as he was maintaining his signs.  On May 15, 2017, Ms. Simonet took pictures of Barnett as he was sitting inside a rented SUV near his truck and signs.

On May 17, 2017, Dr. Householder and Ms. Simonet filed for civil injunctions against Barnett based on false allegations of stalking and photographing.  The state court granted the injunctions and required Barnett to remain at least one hundred feet from the clinic.  Complying with the injunctions, Barnett moved his truck farther from the clinic but continued to display the signs.

On May 22, 2017, Ms. Simonet and Ms. Bryant told the police that Barnett violated the injunctions on May 20, 2017, and May 22, 2017.  A police officer took their reports but did not arrest Barnett.  Later that day, Officer Elsmore interviewed both women.  Officer Elsmore interviewed Ms. Simonet at the veterinary clinic.  Ms. Simonet gave Officer Elsmore a copy of the injunction papers and reported that Barnett drove by in a big red four door truck with a camper cap.  She also mentioned to Officer Elsmore that she was a retired sheriff.  Officer Elsmore did not ask Ms. Simonet follow-up questions.

Officer Elsmore interviewed Ms. Bryant over the telephone.  Ms. Bryant told Officer Elsmore she saw Barnett and knew it was

him because she saw a picture of Barnett on Ms. Simonet's phone. Officer Elsmore did not ask for the picture. That night, based on Ms. Bryant and Ms. Simonet's statements, Officer Elsmore arrested Barnett for violating the injunctions. The misdemeanor charges were later nolle prossed.

Barnett sued Officer Elsmore for malicious prosecution, alleging that he was charged without probable cause. Barnett also sued the city based on municipal liability, alleging it failed to train its officers properly since Officer Elsmore arrested Barnett without probable cause. Officer Elsmore and the city jointly moved to dismiss Barnett's complaint. The district court granted the motion. Barnett appeals the dismissal of his complaint and the denial of leave to amend.

## STANDARD OF REVIEW

We review de novo a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting the factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *McGroarty v. Swearingen*, 977 F.3d 1302, 1306 (11th Cir. 2020) (citation omitted). We also review de novo a district court's legal conclusion that a proposed amendment would be futile in denying leave to amend. *Harris v. Ivax Corp.*, 182 F.3d 799, 802–03 (11th Cir. 1999).

## DISCUSSION

We first address the district court's dismissal of Barnett's claim against Officer Elsmore. Then, we consider the dismissal of

the claim against the city.  And finally, we discuss the district court's denial of leave to amend.

### *Malicious Prosecution Claim Against Officer Elsmore*

Qualified immunity protects officers acting within their discretionary authority unless a plaintiff can show (1) that the officer violated a constitutional right, and (2) that the right violated was clearly established.  *Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010).  Here, Barnett alleged his Fourth Amendment rights were violated by malicious prosecution when he was charged with violating the injunctions.  Being held without probable cause is an unreasonable seizure that violates the Fourth Amendment.  *Id.*  But the existence of probable cause defeats a Fourth Amendment malicious prosecution claim.  *Id.*

"[P]robable cause exists when the facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish 'a probability or substantial chance of criminal activity.'"  *Washington v. Howard*, 25 F.4th 891, 899 (11th Cir. 2022) (quoting *D.C. v. Wesby*, 583 U.S. 48, 57 (2018)).  It "does not require conclusive evidence and 'is not a high bar.'"  *Id.* (quoting *Wesby*, 583 U.S. at 57).  And an officer is generally entitled to rely on a victim's complaint as support for probable cause.  *Rankin v. Evans*, 133 F.3d 1425, 1441 (11th Cir. 1998).

For qualified immunity purposes, an officer does not need actual probable cause but only arguable probable cause.  *Grider*, 618 F.3d at 1257.  In other words, it is enough if "reasonable officers in the same circumstances and possessing the same knowledge as the

Defendants could have believed that probable cause existed to arrest." *Id.*

Here, Officer Elsmore had at least arguable probable cause to charge Barnett. Two witnesses, Ms. Simonet and Ms. Bryant, reported they saw Barnett drive by the veterinary clinic on two separate occasions, thus violating the injunctions. Ms. Simonet worked at the clinic and had multiple previous interactions with Barnett. Ms. Bryant worked at a neighboring business of the clinic. Officer Elsmore interviewed them both, and they confirmed they saw Barnett near the clinic. Officer Elsmore was entitled to rely on their statements as probable cause to charge Barnett. *See Rankin*, 133 F.3d at 1441. And their statements were enough for Officer Elsmore to reasonably believe there was a "probability or substantial chance" that Barnett violated the injunctions. *See Washington*, 25 F.4th at 899.

Barnett contends that Officer Elsmore did not have probable cause because another police officer took reports from Ms. Simonet and Ms. Bryant earlier that day but did not arrest Barnett. But arguable probable cause turns on reasonableness and reasonable officers can come to different conclusions as to whether they should charge a suspect. *See id.* (explaining that the probable cause standard is whether "any particular officer," not "all prudent" officers, could believe there was a substantial chance of criminal activity). Thus, even if another officer did not believe there was probable cause, it would not make Officer Elsmore's belief necessarily unreasonable.

23-12517            Opinion of the Court               7

Barnett further argues Officer Elsmore did not have probable cause because he told Barnett he was being arrested for a felony, despite saying that the offense fell under a misdemeanor exception. But the focus of a Fourth Amendment malicious prosecution claim is on the legal process under which the plaintiff was held. *See Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) ("Malicious prosecution, in contrast, requires a seizure pursuant to legal process. . . . A Fourth Amendment violation involving these seizures occurs when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." (citations and quotations omitted)). Here, according to Barnett's complaint, he was charged with misdemeanor violations of the injunctions. Whatever Officer Elsmore told Barnett, it did not impact Barnett's malicious prosecution claim.

Finally, Barnett argues that Officer Elsmore's investigation was so inadequate that it resulted in Barnett's prosecution without probable cause. Officer Elsmore, Barnett contends, did not question evidence suggesting Barnett's guilt; he did not gather more evidence before making the arrest; and he ignored exculpatory evidence about Barnett's car that suggested Barnett's innocence.

While an officer must conduct a reasonable investigation to establish probable cause, he need not take "every conceivable step. . . at whatever cost, to eliminate the possibility of convicting an innocent person." *Tillman v. Coley*, 886 F.2d 317, 321 (11th Cir. 1989); *see also Rankin*, 133 F.3d at 1436 (explaining that an officer

making an arrest based on probable cause "need not 'investigate independently every claim of innocence'"). And an officer is not required to forgo making an arrest because a suspect proclaims his innocence. *Davis v. City of Apopka*, 78 F.4th 1326, 1342 (11th Cir. 2023).

An officer may not ignore "[c]oncrete evidence that obviously and definitively rules out probable cause," *Id.* at 1344, but he is not required to seek out exculpatory evidence, *Kelly v. Curtis*, 21 F.3d. 1544, 1551 (11th Cir. 1994). Nor is he required "to weigh the evidence in such a way as to conclude that probable cause did not exist." *Washington*, 25 F.4th at 902. Ultimately, an officer is not "required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present[ed] a sufficient basis for believing that an offense ha[d] been committed." *Huebner v. Bradshaw*, 935 F.3d 1183, 1188 (11th Cir. 2019).

Here, Ms. Simonet and Ms. Bryant told Officer Elsmore the same story—that Barnett drove by the clinic two times. Based on these statements, Officer Elsmore could have reasonably believed there was enough for "a probability or substantial chance" that Barnett violated the injunctions. *See Washington*, 25 F.4th at 899. Officer Elsmore was not required to interrogate Ms. Simonet and Ms. Bryant and learn every conceivable detail of the incident or take "every conceivable step" to eliminate the possibility of Barnett's innocence. *See Tillman*, 886 F.2d at 321; *see also Huebner*, 935 F.3d at 1190 (finding probable cause based only on a victim's

statement when "[the victim's] statement gave [the officer] everything he needed").

Once Officer Elsmore established probable cause, he was not required to seek out exculpatory evidence, to forego making an arrest, or to launch into an investigation so Barnett could proclaim his innocence. *See Kelly*, 21 F.3d at 1551; *Davis*, 78 F.4th at 1342; *see also Huebner*, 935 F.3d at 1190 (holding a battery investigation was not inadequate when an officer made an arrest based solely on an alleged victim's statement without interviewing two eyewitnesses). The fact that Barnett was driving a different truck when he was stopped—an hour after Officer Elsmore interviewed Ms. Simonet, and presumably more time after Barnett was said to have driven by the clinic—does not amount to "[c]oncrete evidence that obviously and definitively rule[d] out probable cause."[2] *See Davis*, 78 F.4th at 1344; *id.* at 1349 (explaining that an officer is not required to resolve every inconsistency in the evidence before making an arrest).

---

[2] It's worth noting that, as alleged, Barnett used a red truck to display his protest signs and drove other vehicles to and from the clinic to maintain the signs. But even assuming that Officer Elsmore, who went to the veterinary clinic to interview Ms. Simonet, did not see the red truck and did not know Barnett used multiple cars, the fact that Barnett was in a different colored truck over an hour after the suspected offense would not rise to concrete evidence that would preclude a finding of probable cause. *See Davis*, 78 F.4th at 1344.

Indeed, the alleged exculpatory evidence here is much weaker than evidence this Court previously found ruled out probable cause, such as "multiple tattoos on the perpetrator's arm, which the suspect did not have; documents showing authorization to be in a house, which conclusively established innocence; or a description of a marijuana-seller in her twenties while the person arrested was in her forties." *See id.* at 1344 (cleaned up) (citing Eleventh Circuit cases). Officer Elsmore was not required "to weigh the evidence in such a way as to conclude that probable cause did not exist." *See Washington*, 25 F.4th at 902. Based on Ms. Simonet's and Ms. Bryant's statements, Officer Elsmore could have reasonably believed Barnett violated the injunctions, and he was not required "to sift through conflicting evidence or resolve issues of credibility" before making the arrest. *Huebner*, 935 F.3d at 1188.

*Municipal Liability Claim Against the City of Key West*

For municipal liability, a plaintiff must show: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Since Barnett failed to plead that his Fourth Amendment rights were violated by Officer Elsmore, he also necessarily failed to plead any underlying constitutional violation for his municipal liability claim against the city. *Id.*

*Denial of Leave to Amend Complaint*

Typically, a district court must give a pro se plaintiff at least one chance to amend before the district court dismisses the complaint with prejudice. *Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018). But a district court need not grant leave to amend when "a more carefully drafted complaint could not state a claim." *Id.* (citation omitted).

Here, Barnett could not state a claim for malicious prosecution as the facts show that there was at least arguable probable cause for the misdemeanor charges. Indeed, the crux of Barnett's allegations is that Dr. Householder, Ms. Simonet, and Ms. Bryant lied to have injunctions granted against Barnett and lied to have Barnett arrested for violating those injunctions. As to Officer Elsmore, however, the allegations are simply that he should have done more to discover that the others were lying. We have clearly rejected such an argument. *See, e.g.*, *Davis*, 78 F.4th at 1351 ("[Plaintiff] asks us to assume the role of Investigator-in-Chief and criticize the investigation the officers made, finding it wanting based on his assertions that they should have done more or done it better. He assumes that if the officers had interviewed more people, or asked more questions of those they did interview, they might have found something to exonerate him. His invitation . . . runs directly contrary to binding precedent.").

**AFFIRMED.**